[Civ. No. 7942. First Appellate District, Division Two.—September 13, 1932.]

J. H. SETH et al., Appellants, v. LEW HING et al., Respondents.

Lillick, Olson & Graham, Ira S. Lillick and Allan E. Charles for Appellants.

Russell P. Tyler for Respondents.

NOURSE, P. J.—Plaintiffs sued as joint liquidators of the Oriental Commercial Bank, Ltd., of Hongkong, China, upon a joint and several promissory note of defendants in the sum of $99,534.96. The cause was tried with a jury, which returned a verdict for plaintiffs upon the note with accrued interest in the sum of approximately $127,000. The trial court granted defendants' motion for a new trial; and from that order the plaintiffs have appealed upon typewritten transcripts.

The facts are not in dispute. The answer admitted the execution and delivery of the note, but alleged that it was executed without consideration and as a mere accommodation to the payees with the oral assurance that they would not be called on to pay it. No payments on principal or interest were made. The eleven defendants who executed the note were at the time directors of the Canton Bank of San Francisco. Four of these constituted the financial committee and as such had active management and control of the Canton Bank. Five of these were at the time also directors of the China Mail Steamship Company, a corporation

operating in San Francisco. Defendant Lew Hing was president of the Canton Bank and manager of the China Mail; defendant Fong was the secretary, Mark Thue the treasurer, and Chin Lain the president of the China Mail. Some of the defendants owed the Canton Bank large sums of money and some were heavy owners of its capital stock. The steamship company was badly involved—it owed the Canton Bank $72,000 on a promissory note and over $24,000 through an overdraft. Involuntary proceedings in bankruptcy had been commenced and, in September, 1923, the examiner of the state banking department notified the officers of the Canton Bank that unless the indebtedness of the China Mail to the bank was cleared the bank's license would be revoked. The directors of the Canton Bank appealed to the Oriental Bank, which was the owner of fifty-one per cent of stock of the Canton Bank, and which had a large sum on deposit with the latter. The Oriental Bank authorized the directors of the Canton Bank to take from this deposit a sum sufficient to pay the indebtedness of the steamship company upon the execution and delivery of the promissory note of all the directors. Upon the execution of this note $96,250 in gold was taken from the account of the Oriental Bank and the indebtedness of the steamship company was fully paid. The note in suit was executed on November 1, 1924, as a renewal of this note plus the interest then accrued. The steamship company failed to meet its obligations and thereafter the Oriental Bank went into the hands of a receiver and the plaintiffs herein were authorized under order of the court in the city of Hongkong to prosecute this action as joint liquidators. The defendants rested their case on the special defense that the note was without consideration and that the payee had promised not to hold them liable.

■ Preliminarily we should consider the function of this court on an appeal from an order granting a new trial. On this point the authorities are in accord with the statement found in *Moss* v. *Stubbs*, 111 Cal. App. 359, 363 [295 Pac. 572, 573, 296 Pac. 86], that ''It is equally well settled that where there is no substantial conflict in the testimony on material issues, and the evidence as a whole would be insufficient as a matter of law to support a verdict in favor of the moving party, an order granting a new trial cannot be sustained (*Springer* v. *Pacific Fruit Exchange*, 92 Cal. App.

732 [268 Pac. 951]; *Wendling Lbr. Co.* v. *Glenwood Lbr. Co.,* 153 Cal. 411 [95 Pac. 1029]; *Empire Inv. Co.* v. *Mort,* 169 Cal. 732 [147 Pac. 960]; *Harvey* v. *Machtig,* 73 Cal. App. 667 [239 Pac. 78, 82])." Other authorities to the same effect are *Hitchcock* v. *Rooney,* 171 Cal. 285, 288 [152 Pac. 913]; *Estate of Baird,* 198 Cal. 490, 507 [246 Pac. 324]; *Vertson* v. *City of Los Angeles,* 116 Cal. App. 114 [2 Pac. (2d) 411]. No one of the cases cited by respondents supports their view. In general they hold that an order granting a new trial must be reversed when the undisputed evidence would demand a directed verdict in favor of the appellant. This is merely a more restrictive manner of stating the same rule which we have quoted from *Moss* v. *Stubbs, supra,* without, however, limiting the rule to such an extent. Other cases cited merely support the elementary principle that in general the trial court is vested with a wide discretion in ruling on a motion for a new trial and this principle is not controverted here.

The respondents insist that these appellants are without legal capacity to sue because (a) there is no evidence of an assignment of the note to these appellants; (b) no evidence that the Oriental Bank is a defunct corporation; (c) that if it were defunct the suit should have been prosecuted by the trustees under the terms of section 401 of the Civil Code; (d) that there was no evidence that these appellants had complied with the laws and orders of the court of Hongkong; and (e) that the suit should have been brought in the name and on behalf of the corporation. There was received in evidence duly authenticated copies of orders of the Supreme Court of Hongkong and of the Companies Act No. 58 of 1911 from the ordinances of Hongkong. These records disclose that the Oriental Bank was in the hands of a receiver and that the appellants had been duly appointed under the ordinances of Hongkong to act as joint liquidators and to prosecute this particular action. ▇ Answering the points in order in view of this evidence we may conclude: (a) and (b) the corporation being in the hands of a receiver it is "defunct" for all purposes herein and no assignment was necessary for the prosecution of this action (19 Cal. Jur., p. 964); ▇ (c) that section 401 of the Civil Code has no application to a foreign corporation (sec. 278, Civ. Code), and the method of winding up the affairs of

such a corporation is governed by the law of its residence; ■ (d) that compliance with the requirements of the Hongkong ordinances is to be presumed from the recitals of the orders of the court of that jurisdiction (secs. 1913, 1915, Code Civ. Proc.); ■ (e) that the suit was properly brought in the name of the joint liquidators, they having been expressly authorized so to do by the laws and the order of court under which they are operating and that they are thus the real parties in interest. ■ When, under the laws of a foreign jurisdiction "joint liquidators" stand in the shoes of a receiver for the purpose of prosecuting court proceedings on behalf of the creditors, it will be presumed that such "joint liquidators" have the same powers and duties in that regard as receivers have under the laws of this state (*Christ* v. *Superior Court*, 211 Cal. 593, 598 [296 Pac. 612]) and that they are, therefore, the "proper parties" to prosecute such suits. (Code Civ. Proc., sec. 568.)

■ The only real issue in the case is whether there was a legal consideration for the note. Unfortunately respondents have given us no aid in the consideration of this vital issue, being content with the bald statement "that none of the defendants received any benefit from the execution of either of the notes". But, what is a consideration? Our Civil Code, section 1605, declares that "Any benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise." In 6 Ruling Case Law, page 654, it is said: "A valuable consideration, in the sense of the law, may consist either in some right, interest, profit, or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by the other. Of course, there can be no question as to the sufficiency of the consideration where there is a benefit to the promisor as well as a detriment to the promisee."

As benefits accruing to the promisors in the instant case appellants refer to the admitted facts that respondents were directors and stockholders in the Canton Bank, which re-

ceived over $96,000 in gold from the promisee and was thus able to keep open its doors. That such benefits made a good consideration for the directors' note is the uniform rule of decision. In *Stern* v. *McDonald*, 47 Cal. App. 79, 83 [190 Pac. 221, 223], it is said: "It has been held by numerous authorities that a note or bond executed by the directors of a bank to make good an impairment of the bank's assets, so that the bank may continue in business, is based upon a valid consideration." In *Bohning* v. *Caldwell*, 10 Fed. (2d) 298, a case where the facts were similar to those of the instant case, the court emphasized the fact that the directors' note saved the bank from failure, saved the directors as stockholders from an assessment on their stock, and increased the assets of the bank in which they were interested. Appellants cite to the same effect: *Interstate Trust & Banking Co.* v. *Irwin*, 138 La. 325 [70 South. 313]; *Dykman* v. *Keeney*, 10 App. Div. 610 [42 N. Y. Supp. 488, 493]; *Union Bank of Brooklyn* v. *Sullivan*, 214 N. Y. 332 [108 N. E. 558]; and *Sickles* v. *Herold*, 11 Misc. Rep. 583 [32 N. Y. Supp. 1083], and 15 Misc. Rep. 116 [36 N. Y. Supp. 488]. Other authorities to the point are cited in *Stern* v. *McDonald, supra.*

Secondly, and with equal force, the appellants find a valid consideration in the undisputed evidence coming from respondents that when the note was executed "the $96,250, in gold was taken out of the account" of the Oriental Bank and credited to the account of the steamship company with the Canton Bank. That the detriment thus suffered by the Oriental Bank was a good and sufficient consideration for the note would seem to be too plain for controversy. Respondents do not argue the point and all the authorities we have found support the principle urged by appellants. In *Crocker Nat. Bank, etc.,* v. *Say,* 209 Cal. 436, 440 [288 Pac. 69, 71], our Supreme Court dismissed the point raised in a similar case with the statement that the detriment suffered by the plaintiff bank (payee) was an adequate consideration and that the point did not require discussion. Authorities to the same effect are cited in *Prudential Trust Co.* v. *Moore,* 245 Mass. 311, 316 [139 N. E. 645], a case involving a somewhat similar state of facts.

■ Running through the brief on this point the respondents suggest a lack of consideration because they did

not personally receive any of the money paid by the Oriental Bank. This circumstance was held insufficient to defeat a consideration under similar facts in *Crocker Nat. Bank, etc.,* v. *Say, supra,* where the court say: "The fact that the defendants personally did not receive the proceeds of the note would not, of course, render the note void for want of consideration."

As a second defense the respondents argue that they were mere accommodation makers and that they were assured by the payee that they would not be held personally liable for payment. The point is presented as though it involved the single question of the admissibility of the parol testimony to show the collateral agreement. But there is more than that involved. In the first place, respondents were not accommodation makers. Section 3110 of the Civil Code defines an accommodation party as "one who has signed the instrument as maker, . . . *without receiving value therefor,* and for the purpose of lending his name to some other person". The respondents do not meet either one of the two conditions imposed. They received value for their note and they did not *lend* their name to any other party. Extrinsic evidence to show that the maker of a note was an accommodation maker is limited to those cases in which there was no consideration because, otherwise the maker could not be an accommodation party under the statute. A more exact statement of the rule is found in *Cashman* v. *Harrison,* 90 Cal. 297, 304 [27 Pac. 283, 285], where the court say: "Except for the purpose of proving want of consideration, fraud, accident, or mistake, which might nullify the instrument, parol evidence is inadmissible to vary or contradict a bill of exchange." There is hardly any other subject of the law upon which the authorities are more uniform. (See *Leonard* v. *Miner,* 120 Cal. 403, 406 [52 Pac. 655]; *Lompoc Valley Bank* v. *Stephenson,* 156 Cal. 350 [104 Pac. 449]; *Wright* v. *Shoenhair,* 100 Cal. App. 163, 166 [280 Pac. 174]; *College Nat. Bank* v. *Morrison,* 100 Cal. App. 403, 407 [280 Pac. 218]; Civ. Code, sec. 1625; Code Civ. Proc., sec. 1856.)

The position of respondents on this point is not clear. They suggest in their brief that the evidence was offered for the sole and only purpose of explaining the circumstances and to establish lack of consideration. But they proposed an instruction which the trial judge gave to the jury

advising that if they believed that the note was executed at the request of the Oriental Bank "with the express understanding . . . that said defendants would not be personally called upon to pay said note, your verdict must be in favor of the defendants". The error of the instruction is apparent from the authorities just cited. It is also apparent that throughout the trial of the case respondents urged their defense arising out of the parol agreement that they should not be held liable. That the evidence was not admissible for that purpose is too plain for argument. Respondents cite and rely on *First Nat. Bank of Reedley* v. *Reed*, 198 Cal. 252 [244 Pac. 368]; *Liberty Bank* v. *Nonnenmann*, 96 Cal. App. 478 [274 Pac. 568]; *Liberty Bank* v. *Ernst*, 93 Cal. App. 560 [269 Pac. 959]; *Pacific-Southwest Bank* v. *Valley Finance Corp.*, 99 Cal. App. 728 [279 Pac. 222]; sec. 3110, Civil Code. No one of the cases is helpful. In the Reed case the question of the admissibility of the evidence was not considered, but the opinion discloses that it was received for the purpose of showing no consideration for the note. In the Nonnenmann and Ernst cases the defense was want of consideration and fraud and the admissibility of the parol evidence was not questioned. In *Pacific-Southwest Bank* v. *Valley Finance Corp.*, *supra*, the defense was no consideration for which purpose the evidence was admitted. The code section is merely a definition of an accommodation party and does not relate to the subject of evidence. There is no disagreement in the authorities cited by either party, and we have found no departure from the rule that the maker of a promissory note cannot rely upon an oral promise not to be held in the absence of fraud, mistake or want of consideration. On the other hand, when there is neither fraud nor mistake and a consideration has passed, the maker is bound by his written promise and may not rely upon parol evidence to prove a collateral agreement relieving him from liability.

Appellants argue that none of the defenses pleaded was available because the respondents failed to prove that the president had authority to make the oral contract relied on and because the respondents are estopped to deny their obligation since the note went into the hands of the receiver. Many authorities to both points are cited to which may be added the recent decision in *Wood* v. *Kennedy*, 117 Cal.

App. 53 [3 Pac. (2d) 366]. No useful purpose would be served by discussing these points, as we have heretofore shown that the record demands a reversal of the order for reasons given. Respondents' suggestion of misconduct during the course of the trial does not merit consideration.

The judgment is reversed and remanded to the trial court with directions to enter an appropriate judgment upon the verdict.

Sturtevant, J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 13, 1932, and the following opinion then rendered thereon:

THE COURT.—In their petition for rehearing the respondents criticise our statement of facts and insist that we overlooked the evidence of the relations between the Oriental Bank and the directors of the Canton Bank. They state that the Oriental Bank controlled the other institution and that the directors of the latter were mere "dummies". The criticism is supported by incomplete and isolated quotations from the record with a disregard of the connecting links which demonstrate the true facts. The note in suit was a renewal of a note executed by the same parties in October, 1923. At that time there were eleven directors of the Canton Bank. There is no evidence in the record that any number of them were "dummies". There is evidence that one owned 107¼ shares, one 20 shares, one 30 shares and another 19¼ shares. The stock was entered at $100 a share. One witness testified that he held 10 shares, but that they were owned by the Oriental Bank. He tried to create the impression that none of the other directors owned more than ten shares, but on cross-examination he explained that he was referring to the time when the Canton Bank failed in 1928 and not to the time when the note was executed in 1923. ▮ There is no dispute that the Oriental Bank owned and controlled the majority of the stock of the Canton Bank; but it must be borne in mind that this is a joint and several note and that all the signers united in a common defense, hence, a consideration to one of the signers is sufficient. (Sec. 3105, Civ.

Code; *First Nat. Bank of Scribner* v. *Golder,* 89 Neb. 377 [131 N. W. 600–602].)

On the issue of consideration we find the evidence uncontroverted that some of the respondents were substantial stockholders in the Canton Bank, some were depositors, some owed the bank large sums of money, others were stockholders and directors of the China Mail Steamship Company, and two—Chin Lain and Tong—were personally obligated to the bank in the sum of $72,000 on the indebtedn: s of the steamship company. Hence the loan from the Oriental Bank, which enabled the Canton Bank to keep its doors open and which canceled the indebtedness of the steamship company, benefited these directors in various ways and in varying amounts—some as stockholders in the Canton Bank, some as officers receiving salaries as such, some as depositors, and some as individuals indebted to the bank for personal and company loans. To say that no one of them received any consideration for the loan is to disregard the plain common-sense knowledge of such business transactions.

It may be conceded that the Oriental Commercial Bank, as holder of fifty-one per cent of the stock of the Canton Bank, *also* received some consideration for the loan of its funds to the Canton Bank in return for the detriment which it suffered. But this concession does not compel the conclusion that the holders of the remaining forty-nine per cent of the Canton stock did not receive any consideration for the loan. If a consideration passed to the Oriental Bank it must also have passed to those respondents who were stockholders at least. But this is not the ground upon which the issue should be decided. The rules of law which are determinative of this issue are based upon sound principles. In the absence of fraud, when a good and valid consideration exists, the law will not weigh the *quantum* thereof (*Whelan* v. *Swain,* 132 Cal. 389, 391 [64 Pac. 560]; *Rusconi* v. *California Fruit Exchange,* 100 Cal. App. 750, 754 [281 Pac. 84]); a good and valid consideration exists when there is *either* a benefit to the promisor *or* a detriment to the promisee (sec. 1605, Civ. Code); upon the principle of the Whelan case the law will not weigh the *quantum* of the detriment suffered by the promisee any more than it would weigh the *quantum* of the benefit received by the promisor; where the payee of a promissory note has suffered a detri-

ment and the maker has received a benefit it would be a contradiction of terms to say that there was *no* consideration for the note because the payee has incidentally received some benefit from the transaction. It is the consideration running to the maker which determines whether he is an accommodation party under the terms of section 3110 of the Civil Code. When, as here, the uncontradicted evidence demonstrates that the makers of the note received some consideration and that they were not accommodation parties within the meaning of the code section their defenses fail as a matter of law and this demands a reversal of the order appealed from.

The petition for rehearing is denied.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 10, 1932.